**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rose Calvin, et al., | No. CV-20-08117-PCT-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Rose Calvin, Susie Yellowman, James John, and David Johns ("Plaintiffs") seek judicial review of an administrative decision by the Office of Navajo and Hopi Indian Relocation ("ONHIR") denying their applications for relocation benefits under the Navajo-Hopi Land Settlement Act (the "Settlement Act"). At issue are the parties' cross-motions for summary judgment. (Docs. 14, 15.) The motions are fully briefed and the parties did not request oral argument. For the following reasons, ONHIR's motion is granted and Plaintiffs' motion is denied.

**BACKGROUND**

I.  The Settlement Act

In 1974, Congress enacted the Settlement Act, which authorized the partition of the Joint Use Area between the Hopi and the Navajo tribes, resulting in the Hopi Partition Land ("HPL") and the Navajo Partition Land ("NPL"). 25 U.S.C. § 640d *et seq.*[1] The Settlement

---

[1] Effective September 1, 2016, § 640d of Title 25 was omitted from the United States Code as being of "special and not general application." This omission is editorial only and has no effect on the validity of the law.

Act "required members of each tribe to move from lands partitioned to the other tribe by 1986 and created a commission," now known as OHNIR, "to pay for the major costs of such relocations." *Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir. 1999). ONHIR's decisions are, in turn, subject to review under the Administrative Procedures Act ("APA"). *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989).

ONHIR has promulgated regulations that establish the eligibility requirements for relocation benefits. Under those regulations, an applicant must make two showings: (1) the applicant was, on December 22, 1974, residing on land partitioned to the other tribe; and (2) the applicant achieved "head of household" status on or by a certain date. 25 C.F.R. §§ 700.147, 700.69. The burden is on the applicant to make these showings. *Id.* § 700.147(b).[2]

II. <u>Factual And Procedural History</u>

On August 30, 2010, Plaintiffs—siblings and enrolled members of the Navajo Nation—applied to ONHIR for relocation benefits under the Settlement Act. (Doc. 10 at 10-14, 55-59, 116-120, 150-54.)

On July 26, 2012, Plaintiffs' applications were denied by ONHIR, which found in each case that there was "insufficient evidence on which to find that you [the applicant] were residing on the HPL as of December 22, 1974." (Doc. 10 at 25-26, 79-80, 131-32, 173-74.)

In September 2012, Plaintiffs filed notices of appeal. (*Id.* at 29, 83, 135, 178.)

On December 20, 2013, Plaintiffs' cases were consolidated with those of three other relatives and a hearing was held before an Independent Hearing Officer ("IHO"). (Doc. 14-1 ¶ 63.)

On March 21, 2014, the IHO issued a decision upholding OHNIR's denial of relocation benefits. (Doc. 10-1 at 342-58.) The IHO's reasoning is discussed in more detail below, in relation to the specific challenges raised by Plaintiffs in this proceeding.

---

[2] The head-of-household requirement is not at issue here, as ONHIR's counsel stipulated at the hearing that all Plaintiffs had achieved that status as of December 22, 1974. (Doc. 14 at 5.)

- 2 -

On May 21, 2014, ONHIR issued a notice of "Final Agency Action" in Plaintiffs' cases, affirming the IHO's denial of relocation benefits. (Doc. 10-1 at 362.)

On May 20, 2020, Plaintiffs filed this action, which seeks review of OHNIR's denial of benefits. (Doc. 1.)

On March 30, 2021, Plaintiffs moved for summary judgment. (Doc. 14.)

On April 26, 2021, ONHIR filed a combined response and cross-motion for summary judgment. (Doc. 15.)

On May 26, 2021, Plaintiffs filed a combined response and reply. (Doc. 17.)

On June 10, 2021, ONHIR filed a reply. (Doc. 18.)

**DISCUSSION**

Plaintiffs seek reversal of the IHO's decision on three grounds: (1) the IHO failed to provide specific and cogent reasons for his adverse credibility determinations pertaining to Plaintiffs; (2) the IHO was precluded from making factual findings that contradicted his and ONHIR's factual findings in previous cases; and (3) the IHO's ultimate decision was arbitrary and capricious, and not based on substantial evidence, because he unreasonably dismissed testimony presented at the administrative hearing and arrived at speculative conclusions. Each ground is addressed below.

I.  Legal Standard

Typically, "[t]he court shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, when reviewing an agency decision under the APA,[3] "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Thus, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id.* at 770. "[T]he focal point for

---

[3] "Unless Congress specifies otherwise, we review agency action under the [APA]." *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995).

- 3 -

judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Although judicial review under the APA must be "searching and careful," a reviewing court's role remains "narrow." *Mt. Graham Red Squirrel v. Espy*, 986 F.2d 1568, 1571 (9th Cir. 1993). The reviewing court cannot substitute its judgment for the agency's, especially where the "challenged decision implicates substantial agency expertise." *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1194 (9th Cir. 2000).

## II.  Credibility Determinations

An agency adjudicator's "credibility findings are granted substantial deference by reviewing courts." *De Valle v. Immigration and Naturalization Serv.*, 901 F.2d 787, 792 (9th Cir. 1990) (citations omitted). This is because the "IHO alone is in a position to observe a witness's tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is uniquely qualified to decide whether a witness's testimony has about it the ring of truth." *Begay v. OHNIR*, 305 F. Supp. 3d 1040, 1049 (D. Ariz. 2018) (cleaned up) (citing *Sarvia–Quintanilla v. U.S. I.N.S.*, 767 F.2d 1387, 1395 (9th Cir. 1985)). Thus, so long as an IHO "offer[s] a specific, cogent reason" for an adverse credibility determination, *see De Valle*, 901 F.2d at 792 (citation and internal quotation marks omitted), and that reason is supported by "substantial evidence," *Ceguerra v. Sec. of Health & Hum. Servs.*, 933 F.2d 735, 738 (9th Cir. 1991), a reviewing court must affirm.

Here, the IHO's decision includes the following passage: "To the extent that any of the applicants testified that they resided in, used or visited . . . the claimed area that was partitioned for the use of the Hopi Indians, on or after December 22, 1974, that testimony is not credible." (Doc. 10-1 at 346.) Plaintiffs characterize this as "a one sentence adverse credibility determination as to the testimony of all four Plaintiffs and the three other applicants whose appeals were heard in the consolidated hearing" and contend that such a "cursory dismissal . . . utterly fails to meet the standard to support an adverse credibility determination as instructed by the Ninth Circuit." (Doc. 14 at 6.) Plaintiffs also contend

that the credibility finding in this case was "even more deficient" than the credibility finding that was reversed in *Bedonie v. ONHIR*, No. CV-17-08270-PCT-DJH (D. Ariz. 2019). (*Id.* at 6-7.) Plaintiffs conclude that "where the [I]HO stated no reasons for finding all of Plaintiffs' witnesses not to be credible, not even attempting to meet the requirements of the APA," reversal is warranted. (*Id.* at 8.)

In response, OHNIR accuses Plaintiffs of attacking a strawman. (Doc. 15 at 13-14.) Specifically, OHNIR notes that although only one sentence of analysis appears in the "credibility findings" section of the IHO's opinion, the IHO proceeded to "spen[d] several pages of the decision addressing Plaintiffs' and other witnesses' lack of credibility compared to objectively verifiable, contrary evidence submitted by ONHIR as well as contradictory and unsupported statements from the Plaintiffs." (*Id.*) OHNIR thus argues that "Plaintiffs' attempt to make the IHO's credibility determinations appear thin based on the fact that IHO's reasons are in a different part of the Decision is not persuasive or legally relevant." (*Id.*)

In reply, Plaintiffs seem to acknowledge that the IHO did, in fact, identify at least "three facts" that contradicted their testimony. (Doc. 17 at 3.) Nevertheless, Plaintiffs argue that the IHO's identification of such contradictory facts was not, standing alone, sufficient to support the IHO's adverse credibility determination because "[i]f a witness can be found not credible, simply because of conflicting evidence elsewhere in the record, then the testimony of almost any witness may be dismissed" and contend that the IHO was required to "specifically identify internal contradictions of each witness's testimony, or contradictions with the testimony of others." (*Id.* at 3-5.)

Plaintiffs have not established that the IHO committed reversible error with respect to the adverse credibility determination. Initially, Plaintiffs accused the IHO of providing a "cursory," "one sentence" rationale for the adverse credibility determination that was supported by "no reasons." This argument fails because it is based on a false premise. As ONHIR correctly points out in its response, the IHO provided a laundry list of reasons in support of the adverse credibility determination. Although it is unfortunate that these

reasons appeared under the heading "Hearing Officer's Decision" (Doc. 10-1 at 347-358), rather than under the heading "Credibility Findings Related To All Applicants" (*id.* at 346), it is clear in context that they supplied the IHO's rationale for the adverse credibility determination. *Cf. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("We will . . . uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (citation and internal quotation marks omitted).

To the extent the new argument that Plaintiffs developed for the first time in their reply—that is, that an IHO's adverse credibility determination may not be based solely on the identification of contradictory evidence in the record and instead must be based on the identification of internal inconsistencies within a witness's testimony—is even properly before the Court,[4] it fails as well. As discussed, under the APA's deferential standard of review, this Court must affirm so long as the IHO offered a "specific, cogent reason" for the adverse credibility determination that was supported by substantial evidence. Courts have long recognized that inconsistency with other evidence in the record is a legitimate basis for discounting the credibility of a witness, *see, e.g.*, Ninth Cir. Model Civ. Jury Instr. 1.14 ("In considering the testimony of any witness, you may take into account . . . whether other evidence contradicted the witness's testimony."), and Plaintiffs have not identified any decision suggesting that such contradiction nevertheless fails to qualify as a "specific, cogent reason" supporting an agency adjudicator's credibility determination.

III. Preclusion

Plaintiffs next argue that, because their uncle Harris Chezumpena and his daughters were found in earlier proceedings to have occupied the HPL homesite through 1976, the IHO should have been precluded in this proceeding from finding that Plaintiffs and their families abandoned the site before December 22, 1974. (Doc. 14 at 8-12.)

In response, OHNIR argues that Plaintiffs' position is foreclosed by *United States v. Mendoza*, 464 U.S. 154 (1984), which precludes the application of nonmutual offensive

---

[4] *But see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

- 6 -

collateral estoppel against the government. (Doc. 15 at 14-16.) Alternatively, OHNIR argues that even if Plaintiffs could theoretically apply this doctrine against a government agency, it does not apply here because (1) the earlier cases did not involve the "same parties" and (2) the earlier cases focused on different issues and involved different evidence. (Doc. 15 at 14-15.)

ONHIR has the better side of these issues. Even assuming, without deciding, that Plaintiffs could potentially invoke offensive collateral estoppel in this context, that doctrine extends only to situations in which "the controlling facts and applicable legal rules remain unchanged." *Montana v. United States*, 440 U.S. 147, 158 (1979) (quoting *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 600 (1948)). "[C]hanges in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues." *Id.* at 159. Here, the IHO determined that the evidence presented was inconsistent with a finding that the claimed homesite was occupied by Plaintiffs through December 22, 1974, rendering previous determinations to the contrary incorrect. Given the presence of new evidence, it was permissible for the IHO to reach a different conclusion. *See, e.g., Daw v. OHNIR*, 2021 WL 4938121, *3 (9th Cir. 2021) ("Daw asserts that the ONHIR's decision to grant benefits to Daw's sister and father indicates that it abused its discretion here. But those prior decisions did not bind the ONHIR here because its decision as to Daw was based on evidence it had not previously heard.").

IV.    Arbitrary And Capricious

When reviewing agency action under the APA, the Court may reverse if the agency's decision was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122; *see also* 5 U.S.C. § 706(2)(a), (e). "A decision is arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217, 1224 (9th Cir.

2011) (citation omitted).  Thus, the Court must affirm if "a reasonable basis exists for [the agency's] decision." *Cal. Pac. Bank v. Fed. Deposit Ins.*, 885 F.3d 560, 570 (9th Cir. 2018) (citation omitted).  "A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (citation and internal quotation marks omitted).

Under the substantial evidence standard, a court must sustain an agency's fact-based conclusions unless a reasonable factfinder could not have reached the same conclusion. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Accordingly, "if evidence is susceptible of more than one rational interpretation, the decision of the [agency] must be upheld." *Id.*

Here, Plaintiffs argue that the IHO relied on two justifications for departing from prior findings that the family resided on the site in question on December 22, 1974: (1) the fact that the site was not included in the enumeration conducted by the Bureau of Indian Affairs ("BIA") in 1974-75 ("the Enumeration"); and (2) the fact that Hopi "aggression" likely caused Plaintiffs' family to abandon the site before December 22, 1974.  (Doc. 14 at 12.)  As for the first justification, Plaintiffs contend that the Enumeration "is but one piece of evidence, is not conclusive, and the record as a whole must be examined to determine if Plaintiffs maintained residency on the HPL through December 22, 1974" and that "[i]n other cases applicants have been certified to receive benefits despite their HPL homesites or names not appearing in the enumeration." (*Id.* at 12-13.)  As for the second justification, Plaintiffs argue that the IHO's determination that the family may have fled the homesite because of Hopi aggression was speculative and argue that such speculation cannot supply the "substantial evidence" required to uphold the decision.  (*Id.* at 16.)

ONHIR responds that Plaintiffs' characterization of the IHO's decision as resting on two justifications is inaccurate because the decision was actually based on a variety of

factors, including but not limited to the lack of improvements to the site as evidenced in the Enumeration and the later site visit, the identification of Harris and June Chezumpena living on the NPL months after December 22, 1974 and not disclosing the existence of any HPL site to BIA interviewers, and the accessibility and topography of the area in question. (Doc. 15 at 2-7.) ONHIR contends that, taken together, the facts strongly suggest that Plaintiffs were not residents of the claimed HPL site. (*Id.* at 16-17.)

Plaintiffs have not established that the IHO's decision rested solely on the Enumeration and "speculation" as to Hopi aggression or that the IHO's consideration of those two factors was arbitrary and capricious. The Court must consider the IHO's decision as a whole, giving due deference to the IHO's factual findings. Here, the IHO explicitly recognized that "prior decisions of ONHIR recognize applications for relocation benefits when the applicants have not been identified on the BIA [Enumeration] roster" but distinguished those prior decisions because the applicants in those cases were able to "otherwise prove residence during the relevant time periods," whereas "[i]n these consolidated appeals, the only countervailing indications of residence beyond December 22, 1974 are statements that have been deemed not credible when weighed against the objective and circumstantial evidence." (Doc. 10-1 at 355.) This was not an arbitrary and capricious resolution of the Enumeration issue. *Cf. Begay v. OHNIR*, 2021 WL 4247919, *5 (D. Ariz. 2021) (considering objective factors, including Plaintiff's absence from BIA enumeration, in determining that the IHO's conclusion that Plaintiff was not a legal resident of the HPL as of December 22, 1974 was supported by substantial evidence).

The IHO also relied on verifiable evidence in discussing the tensions between the Hopi and Navajo tribes and the potential for attendant pressure to move off the HPL, including: the impounding of the Chezumpena's livestock, June Chezumpena's complaints and "indigna[tion] about the impound redemption fees," the threats made against her, and her interaction with the Hopi people. (Doc. 10-1 at 349-50.) Again, whether or not this Court would have reached the same decision, the IHO's analysis was not arbitrary and

capricious and was supported by substantial evidence.

Finally, as ONHIR correctly points out (and as Plaintiffs largely fail to acknowledge), the IHO did not rely solely on these considerations and instead considered numerous additional factors in reaching his conclusion, including aerial photography and geological survey terrain maps (*id.* at 344-45), the moving of livestock to an area south of what later became the partition line (*id.* at 346), dismantled improvements (*id.*), the enumeration of June and Harris Chezumpena on the NPL a month after passage of the Act (*id.* at 348), the lack of any remnants or indications of large structures, roads, and fencing (*id.* at 351-53), and contradictions in Plaintiffs' testimony (*id.* at 356-57). Taken together, the IHO did not commit reversible error in concluding that Plaintiffs had not proved residency.

Accordingly, **IT IS ORDERED** that:

(1) Plaintiffs' motion for summary judgment (Doc. 14) is **denied**.

(2) ONHIR's cross-motion for summary judgment (Doc. 15) is **granted**.

(3) The Clerk shall enter judgment accordingly and terminate this action.

Dated this 25th day of October, 2021.

Dominic W. Lanza
United States District Judge