**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rose Calvin, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>  Defendant. | No. CV-20-08117-PCT-DWL<br><br>**ORDER** |

On May 20, 2020, Plaintiffs Rose Calvin, Susie Yellowman, James John, and David Johns filed suit to obtain review of the Office of Navajo and Hopi Indian Relocation's ("ONHIR") denial of their applications for relocation benefits under the Navajo-Hopi Land Settlement Act (the "Settlement Act"). (Doc. 1.) The Court initially affirmed the Independent Hearing Officer's ("IHO") denial of benefits. (Doc. 19.) However, after Plaintiffs filed a timely motion to amend the judgment (Doc. 21), the Court ruled in Plaintiffs' favor and remanded to the IHO for further proceedings. (Doc. 25.)

The Court's change in position was based on the IHO's disregard of a stipulation between Plaintiffs and ONHIR that "Mr. Harris Chezumpena had a legal residence on the Hopi Partitioned Lands as of December 22, 1974." (Doc. 25 at 2.) The IHO's failure to acknowledge or address this stipulation required reversal because "at least some of the IHO's proffered reasons for rejecting Plaintiffs' claims of residency . . . were premised on the belief that the entire Chezumpena family, including Harris Chezumpena, had abandoned any residence on the HPL before December 22, 1974." (*Id.* at 6.) Because it

was "unclear whether a conclusive determination that the homesite had *not* been abandoned by Harris Chezumpena before that date would have altered the IHO's conclusion," the case was remanded so the IHO could "properly consider the stipulation, along with all other evidence, in determining Plaintiffs' legal residency." (*Id.* at 7.)

Now pending before the Court is Plaintiffs' motion for $29,934 in attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Doc. 27.) For the following reasons, Plaintiffs' motion is granted.

**DISCUSSION**

I. <u>Legal Standard</u>

The EAJA provides, in relevant part, that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This provision "creates a presumption that fees will be awarded to prevailing parties." *Flores v Shalala*, 49 F.3d 562, 569 (9th Cir. 1995).

For EAJA purposes, the term "party" is defined as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed" or "any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B).

II. <u>Analysis</u>

    A. **The Parties' Arguments**

Plaintiffs argue they are entitled to fees under the EAJA because (1) they were the prevailing parties; and (2) ONHIR's position was not "substantially justified." (Doc. 27 at 1-2.) As for the former, Plaintiffs assert that they prevailed "by virtue of this Court's

remand" and that they fall below the EAJA's income threshold because "[t]he net worth of each individual Plaintiff is less than $2,000,000." (*Id.* at 3.). As for the latter, Plaintiffs assert without explanation that "the position of ONHIR was not substantially justified" and argue that they have "no proof burden" with respect to this element. (*Id.* at 3-4.)

ONHIR responds that Plaintiffs' motion fails for two reasons. (Doc. 32.) First, ONHIR argues that "[t]he Navajo Nation, not the named plaintiffs, is the real party in interest" because Plaintiffs' counsel's retainer agreement with the Navajo Nation ("the Nation") shows that the "Nation has had complete control over all client decisions," "paid all of counsel's fees," and "will receive any EAJA award." (*Id.* at 2-7.) ONHIR contends that the Nation is not eligible to receive a fee award under the EAJA because its net worth exceeds $7,000,000 and it has over 500 employees and it therefore does not qualify as a "party" under § 2412(d)(1)(B). (*Id.* at 7-9.) Second, and alternatively, ONHIR argues that EAJA fees are unavailable because its position was substantially justified. (*Id.* at 9-14.)

Plaintiffs reply that ONHIR "provid[es] no authority for a finding that the [Nation] is the real party in interest." (Doc. 35 at 2-3.) Plaintiffs further contend that they must be the real parties in interest because "[t]he Navajo Nation, as an entity, cannot apply for [relocation] benefits nor be found eligible to receive them." (*Id.* at 2.) Plaintiffs also dispute ONHIR's suggestion that they lacked an attorney-client relationship with their counsel, arguing that ONHIR's emphasis on the lack of "documentation" is misplaced because ONHIR didn't request such documentation during the discovery process and they wouldn't have produced it even if requested for the obvious reason that it is privileged. (*Id.* at 3.) As for substantial justification, Plaintiffs state that the Ninth Circuit held in *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005), that "it will be only a decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." (*Id.* at 9.) Plaintiffs conclude that because here "two Article III judges ruled that the administrative decision of ONHIR was lacking in substantial evidence and ordered the case to be remanded" and "a decision that ignores a stipulation entered into

by the parties[] is not subject to reasonable debate," ONHIR could not have been substantially justified in its position. (*Id.* at 10-11.)

**B.     Analysis**

1.     Prevailing Party

Whether Plaintiffs' unusual representation arrangement precludes them from obtaining an award of attorneys' fees under the EAJA presents an interesting and somewhat unsettled question.

On the one hand, other judges of this court have expressly rejected the argument that ONHIR presents here. In *Stago v. Office of Navajo and Hopi Indian Relocation*, No. CV-20-08118-SPL (D. Ariz.), which is the related case that helped spur this Court to reconsider its initial grant of summary judgment in ONHIR's favor, the plaintiffs—who are represented by the same counsel as Plaintiffs and appear to have been operating under an identical representation arrangement—filed an application for EAJA fees. (Dkt. No. 38.) In response, ONHIR argued, just as it argues here, that the plaintiffs were ineligible to receive EAJA fees because the Nation was the real party in interest. (Dkt. No. 46 at 3-9.) ONHIR's eligibility briefing in *Stago* appears to have been largely cut-and-pasted into ONHIR's briefing here. (*Id.*) In an August 8, 2022 order, Judge Logan rejected ONHIR's argument and granted the fee request, holding in relevant part that "[w]hatever the relationship between the Nation, the named Plaintiffs, and Counsel may be, . . . the Court finds no precedent to suggest that a non-named entity can be the prevailing party. Therefore, the Court declines to follow ONHIR's suggestion that Plaintiffs should be denied reimbursement based on the control an outside party had over the litigation of this case." (Dkt. No. 50 at 3.)

On the other hand, in *George v. Office of Navajo and Hopi Indian Relocation*, 825 F. App'x 419 (9th Cir. 2020), the Ninth Circuit reversed ONHIR's denial of an application for relocation benefits under the Settlement Act. The appellate docket reveals that, afterward, the plaintiff filed an application for over $88,000 in EAJA fees and expenses. (*George v. Office of Navajo and Hopi Indian Relocation*, No. 19-17153, Dkt. No. 32.)

ONHIR opposed the motion on only one ground—that the plaintiff was ineligible for fees because, based in part "on documents produced in discovery in an Arizona district court case involving another claimant and the same counsel as in this case . . . it is undisputed that the Nation has paid all of counsel's fees in this case, and that the Nation will receive any EAJA award." (Dkt. No. 35-1 at 5.) ONHIR did not, in contrast, challenge the size of the fee request or argue that its litigation position was substantially justified. (Dkt. No. 35-1.) These details are potentially significant because, in a January 20, 2021 order, the panel denied the fee request in full. (Dkt. No. 37.) Although the one-sentence order does not provide a rationale for the decision, the briefing sequence summarized above suggests it only could have been based on a determination that the Nation qualified as the true "party" pursuant to a real-party-in-interest analysis.

At any rate, because neither *Stago* nor the unpublished order in *George* is binding here, the Court must address ONHIR's eligibility argument on its merits. Although this inquiry is ultimately governed by Ninth Circuit law, it is helpful to begin by discussing *Unification Church v. INS*, 762 F.2d 1077 (D.C. Cir. 1985), because the Ninth Circuit has repeatedly cited and relied on *Unification Church* in subsequent EAJA eligibility cases.

In *Unification Church*, four plaintiffs—a church and three individuals—sued to overturn the INS's determination that the three individuals could not remain in the United States. *Id.* at 1079. After prevailing, all four plaintiffs filed motions for EAJA fees. *Id.* With respect to the three individual plaintiffs, the district court concluded they were ineligible because "the fee arrangement between the individual [plaintiffs] and the Church . . . made the Church the only 'real party in interest' with respect to fees, and thus made irrelevant the qualification *vel non* of individual plaintiffs for fees." *Id.* at 1081. The D.C. Circuit affirmed. As an initial matter, the court held that although the "doctrine of the real party in interest" is usually applied in other contexts, it may be applied for purposes of determining EAJA fee eligibility. *Id.* at 1081-82 ("Its use in a case involving attorney's fees is unusual but not unprecedented."). On the merits, the court found it significant that although plaintiffs' counsel "was 'retained' by the individual plaintiffs to represent them

before the INS and in this court, his 'arrangement' for payment for his services is solely with the [Church]." *Id.* at 1082. The court stated that this arrangement was problematic because the church itself was ineligible for fees, so "[i]f we were to award fees in this case on the basis that the individual appellants qualified under subsection (d)(2)(B)(i), we would open the door for the wholesale subversion of Congress's intent to prevent large entities from receiving fees under subsection (d)." *Id.* Thus, the court held that "where the fee arrangement among the plaintiffs is such that only some of them will be liable for attorney's fees, the court shall consider only the qualification *vel non* under the Equal Access to Justice Act of those parties that will be themselves liable for fees if court-awarded fees are denied." *Id.*

The next relevant decision is *Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991). There, three plaintiffs—two entities (TVFM and NWFPA) and an individual (Love)—sued to restrain the Environmental Protection Agency from suspending the use of a particular pesticide. *Id.* at 1493. After prevailing, one of the entity plaintiffs (NWFPA) filed a motion for EAJA fees, but the other two plaintiffs did not join in the request. *Id.* The government opposed this fee request on various grounds, including that although NWPFA itself fell within the EAJA's eligibility guidelines, it had failed to establish that each of its individual members was also eligible. *Id.* at 1494. In support of this theory, the government invoked the "real party in interest doctrine" applied in *Unification Church*, arguing that "because the members of the NWPFA received benefits from the merits determination in this litigation, [they] are also the real parties in interest for the fee award." *Id.* The Ninth Circuit disagreed, holding that "[t]he members of the NWFPA would be the real party in interest in the fee litigation only if they were liable for the NWPFA's attorney's fees. Nothing in the record points to such an agreement." *Id.* Alternatively, the government argued that NWPFA should be deemed ineligible because "there are other possibly ineligible plaintiffs in the lawsuit who were represented by the same counsel" and "where the same attorneys represent all parties the special circumstance of a 'free rider' plaintiff arise[s]—a plaintiff who is ineligible for fees under the EAJA but who ends up paying no

fees because the other, eligible plaintiff pays them all through the court-awarded fees." *Id.* at 1495. The Ninth Circuit rejected this argument as well, holding that "the existence of a free rider problem has not been established" because (1) "the government has failed to show that the other plaintiffs were ineligible" and (2) "the government has failed to show that the other two plaintiffs did not have any responsibility for the attorney's fees." *Id.*

Finally, in *Southwest Marine, Inc. v. United States*, 43 F.3d 420 (9th Cir. 1994), a general contractor (SWM) entered into a refurbishment contract with the Navy. *Id.* at 421. Separately, the general contractor entered into various subcontractor arrangements, including a subcontract with a company called UPS to perform certain sandblasting and painting services. *Id.* After UPS encountered cost overruns, it persuaded SWM to file a notice of claim with the Navy Contracting Officer—a step that UPS could not perform directly because, as a subcontractor, it was "not in privity with the government." *Id.* After the claim was allowed by the Armed Services Board of Contract Appeals, UPS moved for an award of EAJA fees. *Id.* After this request was denied, UPS sought further review. *Id.* On appeal, the Ninth Circuit stated that "the critical question of statutory interpretation" posed by the case was whether "an interested entity which is neither named nor admitted in an action meet[s] the statutory definition of 'party' under the EAJA." *Id.* a 423. UPS argued that, under the "real party in interest doctrine" applied in *Unification Church* and *Love*, it should be considered the prevailing party, but the Ninth Circuit rejected such "an expansive reading of the EAJA definition of 'party.'" *Id.* at 422. First, the court distinguished *Unification Church*, which it described as "the leading case" concerning the real-party-in-interest doctrine, because "[b]oth the individuals and the church were named parties in the action . . . and the court's decision focused narrowly on the statutory requirement that a party 'incur' costs to be eligible for an award." *Id.* at 422-23. Next, the court distinguished *Love*, which it described as "acknowledg[ing] the real party in interest test of *Unification Church*," because "*Love* provides little guidance in this case, where the entity that incurred the cost of litigation, UPS, was not a party at all." *Id.* at 423. Finally, the court cited, with seeming approval, the Eighth Circuit's opinion in *SEC v. Comserv*,

908 F.2d 1407, 1416 (8th Cir. 1990), which it summarized as "suggest[ing] that an entity cannot be a 'real party in interest' unless it is first a 'party.'" *Id.*

With this backdrop in mind, the Court disagrees with ONHIR's contention that the Nation, rather than the individual Plaintiffs, should be considered the prevailing "party" here for EAJA eligibility purposes. The core holding of *Unification Church* is that "where the fee arrangement *among the plaintiffs* is such that only *some of them* will be liable for attorney's fees, the court shall consider only the qualification *vel non* under the Equal Access to Justice Act of those parties that will be themselves liable for fees if court-awarded fees are denied." 762 F.2d at 1082 (emphases added). As the italicized language makes clear, this variant of the real-party-in-interest doctrine may only be applied in multi-plaintiff litigation in which some of the plaintiffs would be ineligible for EAJA fees and there is an arrangement between the plaintiffs that would shield the EAJA-eligible plaintiffs from incurring any costs. But these conditions are not present here. The Nation was never a named plaintiff in this action.

Admittedly, there are passages in *Love* that can be viewed as suggesting the real-party-in-interest doctrine is not limited in this fashion. There, the court rejected the government's attempt to argue that NWFPA's individual members "are also the real parties in interest for the fee award" on the ground that "[t]he members of the NWFPA would be the real party in interest only if they were liable for the NWFPA's attorney's fees." 924 F.2d at 1494. This passage arguably suggests, by negative implication, that NWFPA's members *could* have been considered the real parties in interest for EAJA fee eligibility purposes, even though they were not named parties in the litigation, if only the fee arrangement has been structured differently.

Nevertheless, the Ninth Circuit's subsequent decision in *Southwest Marine* counsels against interpreting *Love* in this fashion. *Southwest Marine* characterizes *Unification Church* as "the leading case" concerning the real-party-in-interest doctrine's application to EAJA eligibility. 43 F.3d at 422. This characterization is significant because, as noted above, *Unification Church* holds that the doctrine applies only when one of the named

parties to the litigation is ineligible. *Southwest Marine* also emphasizes that "[b]oth the individuals and the church were named parties in" *Unification Church* and dismisses *Love* as providing "little guidance" in a case where "the entity that incurred the cost of litigation . . . was not a party at all." *Id.* at 422-23. These are further indications that the real-party-in-interest doctrine should be limited to circumstances where the purported real party in interest was a named co-plaintiff. *Southwest Marine*'s discussion of *Comserv* provides further support for this conclusion.

For these reasons, each Plaintiff qualifies as a "party" for EAJA purposes in this action. To the extent this conclusion is in tension with the unpublished order denying the fee application in *George*, the Court notes that it has done its best to understand and faithfully apply the published Ninth Circuit decisions that must guide its analysis.

Finally, although ONHIR does not appear to dispute these aspects of the analysis, the Court also finds that (1) Plaintiffs "prevailed" by obtaining a remand of their case, *see Flores*, 49 F.3d at 568; and (2) each Plaintiff meets the individual eligibility criteria under § 2412(d)(2)(B) because each submitted undisputed evidence of a net worth below $2 million at the time of filing. (Doc. 35-2 at 2-3 [David Johns's declaration]; Doc. 35-3 at 2-3 [Rose Calvin's declaration]; Doc. 35-4 at 2-3 [Susie Yellowman's declaration]; Doc. 35-5 at 2-3 [Ruth Ann John's declaration on behalf of James John].)

### 2.  Substantial Justification

As noted, the EAJA provides that the Court "shall" award fees to a prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(a). "The 'position of the United States' includes both the government's litigation position and the underlying agency action giving rise to the civil action. Thus, if the government's underlying position was not substantially justified, we must award fees and need not address whether the government's litigation position was justified." *Tobeler v. Colvin*, 749 F.3d 830, 832 (9th Cir. 2014) (cleaned up). The government's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Pierce v.*

*Underwood*, 487 U.S. 552, 565 (1988); *accord Flores*, 49 F.3d at 569-70. In other words, substantial justification equates to reasonableness. *Thanhgaraja*, 428 F.3d at 874.

"The government bears the burden of demonstrating substantial justification." *Id.* "[I]t will be only a 'decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Id.* (quoting *Al-Harbi v. INS*, 284 F.3d 1080, 1085 (9th Cir. 2002)).

In *Stago*, Judge Logan found that the IHO's "disregard of the parties' stipulation was an unreasonable legal error" that eliminated any claim of substantial justification. (*Stago v. Office of Navajo and Hopi Indian Relocation*, No. CV-20-08118-SPL, Dkt. No. 50 at 5.) The Court agrees. Therefore, regardless of the reasonableness of the government's litigation conduct during the proceedings in *this* Court, the government was not substantially justified in its position.

### 3. Reasonableness Of Fees

Having determined that Plaintiffs are eligible for EAJA fees, the Court must determine whether the fees that Plaintiffs request are reasonable. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161 (1990). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Jean*, 496 U.S. at 161 ("[O]nce a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*.").

ONHIR does not contest the reasonableness of Plaintiffs' fee request. Plaintiffs assert that the attorney time was "billed at the prevailing rates established for the years 2020 and 2021 by the U.S. Court of Appeals for the Ninth Circuit." (Doc. 27 at 4; Doc. 27-1 at 5-6.) Those rates were $207.78 an hour in 2020 and $217.54 per hour in 2021, and Plaintiffs expended 20.5 hours in 2020 and 116.2 hours in 2021. (Doc. 27-1 at 6.) The only cost was a $400 filing fee. (Doc. 27-2.) This Court's independent review suggests

those rates and times are reasonable.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for attorneys' fees (Doc. 27) is **granted**. Plaintiffs are awarded a total of $29,934.

Dated this 2nd day of September, 2022.

Dominic W. Lanza
United States District Judge